UNITED STATES DISTRICT COURT

Northern District of California

San Francisco

| | |
|---|---|
| INTEGRATED SPORTS MEDIA, INC.,<br><br>　　　　　Plaintiff,<br>　v.<br>ERLINDA MARGARITA MENDEZ,<br>individually, and d/b/a EL PATIO<br>RESTAURANT,<br><br>　　　　　Defendants.<br>_____/ | No. C 10-03516 PJH (LB)<br><br>**REPORT AND RECOMMENDATION**<br><br>[ECF No. 57] |

## INTRODUCTION

Plaintiff Integrated Sports Media, Inc. ("ISM") moves for entry of default judgment in the amount of $111,100.00 against Defendant Erlinda Margarita Mendez, both individually and doing business as El Patio Restaurant. ISM seeks damages stemming from Ms. Mendez's alleged violation of 47 U.S.C. § 605, 47 U.S.C. § 553, and for conversion of ISM's property. Judge Phyllis Hamilton, the presiding judge in this action, referred ISM's motion to the undersigned for a report and recommendation. Having considered the moving papers, the undersigned RECOMMENDS that ISM's motion be granted in part for the reasons discussed below.[1]

//
//

---

[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for disposition without oral argument.

C 10-03516

**STATEMENT**

**I.   ALLEGATIONS OF THE COMPLAINT**

ISM is a commercial distributor and licensor of sporting events.  *See* Complaint, ECF No. 1, ¶ 11.[2]  ISM contracted for the exclusive rights to distribute the CONCACAF World Cup Qualifier Tournament via closed-circuit television, including the El Salvador v. Trinidad and Tobago World Cup Qualifier Game on August 12, 2009 (the "Program").  *Id.* at ¶ 9.  ISM then entered into sublicensing agreements with various commercial entities in North America, which permitted these establishments to exhibit the Program.  *Id.* at ¶ 10.  ISM alleges that it expended substantial amounts of money to market, advertise, promote, administer, and transmit the Program to these commercial entities.  *Id.* at ¶ 11.

ISM further alleges that on August 12, 2009, Ms. Mendez showed the Program at El Patio Restaurant in San Francisco without obtaining a license from ISM to do so.  *Id.* at ¶ 12.  Ms. Mendez's actions were allegedly willful, for purposes of commercial advantage or private financial gain, and with the knowledge that the Program was not to be exhibited by commercial entities unauthorized to do so.  *Id.* at ¶ 13.

In support of these allegations, ISM submits an affidavit from a private investigator, Kurt Serbus, who attested that he observed the Program at El Patio Restaurant on August 12, 2009.  *See* Serbus Affidavit, ECF No. 57-3.  Mr. Serbus observed one mid-sized flat screen television in a corner of the restaurant.  *Id.* at 1.  On the television he viewed the World Cup Qualifier soccer match between El Salvador and Trinadad and Tobago.  *Id.*  During the thirteen minutes he was present, Mr. Serbus took three headcounts of 29, 31, and 31, respectively.  *Id.* at 2.  He estimated that the restaurant's capacity is 75 people.  *Id.*  He observed a white board near the restaurant's front door stating that the El Salvador/Trinadad and Tobago and USA/Mexico matches would be shown.  *Id.* at 1.  Mr. Serbus did not report seeing either a satellite dish or cable box in the restaurant.  *Id.* at 1-2.

In addition, ISM submits an affidavit of ISM's custodian of records, Doug Jacobs.  *See* Jacobs Affidavit, ECF. No. 60 at 1-7.  To his affidavit Mr. Jacobs attached the License Agreement under

---

[2]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the page.

1  which ISM was authorized to market and distribute the Program.  *See* Jacobs Affidavit at 9-16.  Also

2  provided is the "Closed-Circuit Television Rate Card" for the Program, listing commercial

3  sublicense fees for establishments based on seating capacity.  *Id.* at 2-3, ¶ 8; 18.

## II. PROCEDURAL HISTORY

On August 11, 2010, ISM filed a complaint in this Court based on the above allegations and asserting the following four claims: (1) violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq*.; (2) violation of the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq*.; (3) conversion under California state law; and (4) violation of California Business & Professions Code § 17200, *et seq*.  *See id*. at 3-8, ¶¶ 8-36.

The Clerk of Court first entered default pursuant to Federal Rule of Civil Procedure 55(a) in October 2010.  First Entry of Default, ECF No. 56.  ISM then moved for default judgment.  Appl. for Default J., ECF No. 15; Mem. of P. & A. Supp. Appl. for Default J., ECF No. 25-1.  Ms. Mendez opposed ISM's application and moved to set aside the entry of default.  Motion to Set Aside Default, ECF No. 30; Response to Appl. for Default J., ECF No. 31.  Judge Hamilton denied ISM's motion for default judgment, and granted Ms. Mendez's motion to reopen the case.  Order Setting Aside Entry of Default, ECF No. 41.  In July 2011, the parties reached a settlement and the case was conditionally dismissed.  Order of Dismissal, ECF No. 47.

In January 2014, ISM moved to reopen the case due to Ms. Mendez's failure to comply with terms of the settlement agreement.  Motion to Reopen Case, ECF No. 50.  Judge Hamilton granted ISM's motion and ordered the parties to appear at a case management conference.  Order Granting Motion to Reopen Case, ECF No. 52.  Due to Ms. Mendez's failure to appear at the case management conference, Judge Hamilton ordered her to show cause why default should not be entered and to answer or otherwise respond to the complaint.  Order to Show Cause and Order Requiring an Answer, ECF No. 55.  After Ms. Mendez failed to respond to the order to show cause and to file a file a responsive pleading or otherwise appear, the Clerk of the Court entered default on March 19, 2014.  Second Entry of Default, ECF No. 56.

//

In April 2014, ISM filed a second application for default judgment supported by a memorandum of law seeking an award of statutory and enhanced damages in the amount of $110,000 plus $1,100 in damages for the tort of conversion. *See* Appl. for Default J., ECF No. 57; Mem. of P. & A. Supp. Appl. for Default J., ECF No. 57-1; Riley Declaration, ECF No. 57-2 at ¶ 7. Judge Hamilton referred ISM's motion for default judgment to the undersigned for a report and recommendation. Order of Reference, ECF No. 58. ISM served Ms. Mendez with the motion for default judgment by mail. Proofs of Service, ECF No. 57 at 4, ECF No. 57-1 at 23. Ms. Mendez has not appeared or responded to ISM's motion, and the deadline for opposing the motion has passed. *See* N.D. Cal. Civil L.R. 7-3(a).

**ANALYSIS**

**I. JURISDICTION**

Courts have an affirmative duty to examine their own jurisdiction—both subject matter jurisdiction and personal jurisdiction—when entry of judgment is sought against a party in default. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court has subject matter jurisdiction over this action because the complaint seeks relief pursuant to causes of action authorized by 47 U.S.C. § 553 and 47 U.S.C. § 605. *See* 28 U.S.C. § 1331. A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). In the complaint, ISM alleges that Ms. Mendez is the owner, operator, licensee, permitee, person in charge, and/or individual with dominion, control, oversight and management of El Patio Restaurant, which is located at 3193 Mission Street, San Francisco, California—an address within this district. Complaint, ECF No. 1 at ¶ 7. ISM's claims for relief arise out of Ms. Mendez's alleged operation of El Patio Restaurant. Because the violations arise out of Ms. Mendez's alleged business conduct in the district, personal jurisdiction over her is proper.

Finally, the court must assess whether Ms. Mendez was properly served with notice of this action. Upon review of the proof of service, the court finds that Plaintiff effected service of process in conformity with Federal Rule of Civil Procedure 4(c) and 4(e)(1) and California Civil Procedure Code § 415.20(b). *See* Executed Summons, ECF No. 5.

//

## II. DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those regarding damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

For the reasons discussed below, the majority of these factors support default judgment on two of ISM's claims. First, because Ms. Mendez has not answered the complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown if the motion for default judgment were to be denied. For the same reason, if the motion were denied, ISM would almost certainly be left without a remedy. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This is especially true when ISM properly served Ms. Mendez and where there is no evidence in the record that her failure to appear and otherwise defend this action was the result of excusable neglect.

Two factors, though, weigh against default judgment. First, ISM seeks the maximum possible statutory damages of $10,000 and the maximum enhanced damages of $100,000. In this regard, ISM's damages request is disproportionate to the harm alleged. *See J&J Sports Prods., Inc. v. Wood*, No. 11-cv-1160 PJH (JSC), 2011 WL 6961334, at *3 (N.D. Cal. Nov. 2, 2011), *report and recommendation adopted*, 2012 WL 33258 (N.D. Cal. Jan. 6, 2012); *Joe Hand Promotions Inc. v. Meola*, No. 10-4781 CW (JCS), 2011 WL 2111802, at *4 (N.D. Cal. Apr. 22, 2011). Second, strong public policy favors decisions on the merits. *Eitel*, 782 F.2d at 1472.

//

The court must also examine the merits of ISM's substantive claims and the sufficiency of the evidence. These factors essentially require a plaintiff to state a claim on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). ISM's motion seeks default judgment against Ms. Mendez for (1) violating 47 U.S.C. § 605 and (2) conversion.[3]

Section 605 "prohibits commercial establishments from intercepting and broadcasting to its patrons *satellite* cable programming." *J&J Sports Prods., Inc. v. Mosley*, No. 10-5126 CW (EMC), 2011 WL 2066713, at *3 (N.D. Cal. Apr. 13, 2011) (emphasis in original). In contrast, § 553 "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service offered over a *cable system*." *Id*. (emphasis in original). "A signal pirate violates section 553 if he intercepts a cable signal, [but] he violates [section] 605 if he intercepts a satellite broadcast." *J&J Sports Prods., Inc. v. Manzano*, No. 08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). "Plaintiff may not recover under both 47 U.S.C. § 605 and 47 U.S.C. § 553." *J&J Sports Prods. v. Ro*, No. 09-02860 WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010).

ISM seeks default judgment for ISM's violations of both § 605 and § 553, but does not include § 553 in its itemized damages calculation; instead, it seeks statutory and enhanced damages only under § 605. *Compare* App. for Default J., ECF No. 57 at 2, ¶ 4 *with* Riley Declaration, ECF No. 57-2 at 2, ¶ 7. ISM contends that damages under § 605 are proper because "[it] should not be prejudiced because it cannot isolate the precise means of signal transmission Defendant used . . . ." Motion, ECF No. 57-1 at 8. Beyond this single statement, ISM does not explain why it is entitled to relief under § 605 rather than § 553.[4] Judge Alsup rejected this argument in a similar case, holding

---

[3] As described above, ISM's complaint also included a claim under California Business & Professions Code § 17200, *et seq*. Because Plaintiff's application does not request default judgment on this claim, *see* Riley Declaration, ECF No. 57-2 at 2, ¶ 6, the court considers the claim abandoned, *see J&J Sports Prods., Inc. v. Torres*, No. 10-5086 SC, 2011 WL 3739613, at *2 (N.D. Cal. Aug. 24, 2011).

[4] The court notes that § 605 has a higher minimum damages award than does § 553 and a requirement for attorneys' fees and costs (as opposed to the discretionary fees under § 553(c)(2)(C)).

1  that "Plaintiff should bear the burden of conducting a reasonable preliminary investigation and
2  pleading facts to support the tougher penalty," and noting that plaintiff's investigator "failed to even
3  check whether a cable box or satellite dish was visible." *G&G Closed Circuit Events, LLC v.*
4  *Castro*, C 12-04649 WHA, 2013 WL 871913, at *3 (N.D. Cal. Mar. 7, 2013).

5  As other judges in this district have reasoned, it is unlikely that a defendant would use *both* a
6  cable box and a satellite dish to broadcast a single program simultaneously. *See Wood*, 2011 WL
7  6961334, at *3; *J&J Sports Prods., Inc. v. Seldner*, No. 10-5137 THE, 2011 WL 2650961, at *2
8  (N.D. Cal. July 6, 2011); *J&J Sports Prods., Inc. v. Guzman*, No. 08-5469 MHP, 2009 WL 1034218,
9  at *2 (N.D. Cal. Apr. 16, 2009). Here, Mr. Serbus did not attest to seeing either a satellite dish or a
10 cable box. *See* Serbus Affidavit, ECF No. 57-3. In similar cases, the judges of this district have
11 "reasoned that § 553 should be applied rather than § 605 because 'cable boxes are more easily
12 hidden and more likely to be the source of transmission.'" *J & J Sports Prods., Inc. v. Parayno*,
13 C 12-01704 PJH (JCS), 2012 WL 7159720, at *4 (N.D. Cal. Nov. 15, 2012) (quoting *J & J Sports*
14 *Productions, Inc. v. Basto*, C 10-5122 PJH, 2011 WL 2197756, at *3 (N.D. Cal. June 6, 2011)).
15 Accordingly, the court concludes that ISM has failed to state a claim for relief under § 605 and
16 recommends that the motion for default judgment be denied as to that claim. The allegations of the
17 complaint are sufficient to establish liability under § 553, however. *See J&J Sports Prods. Inc. v.*
18 *Man Thi Doan*, 08-00324 RMW, 2008 WL 4911223, at *3 (N.D. Cal. Nov. 13, 2008).

19 ISM has also brought a claim for conversion under California Civil Code § 3336. The elements
20 of a conversion claim in California are "(1) ownership or right to possession of property, (2)
21 wrongful disposition of the property right and (3) damages." *G.S. Rasmussen & Assocs. v. Kalitta*
22 *Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). ISM has alleged ownership over the nationwide
23 distribution rights for the Program, Ms. Mendez's misappropriation of this ownership right, and
24 damages based on the denial of the license fee to which ISM would otherwise have been entitled.
25 *See* Complaint, ECF No. 1 at ¶¶ 9-12, 23-24. ISM has met its burden to prove damages, *see Phillip*
26 *Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003), by offering
27 evidence that the license fee for El Patio Restaurant would have been $1,000. *See* Jacobs Affidavit,
28 ECF No. 60 at ¶ 8.

1  Because the majority of the *Eitel* factors weigh in favor of a default judgment, the undersigned
2  recommends that ISM's motion for default judgment be granted on its claim under 47 U.S.C. § 553
3  and for conversion.

### III. SCOPE OF RELIEF

#### A. Statutory Damages

ISM argues that it is entitled the maximum statutory damages of $10,000 under § 605(e)(3)(C)(i)(II) as well as the maximum enhanced damages under § 605(e)(3)(C)(ii) of $100,000. Motion, ECF No. 57-1 at 11-19. In light of the above conclusion that ISM fails to state a claim for relief under § 605, the court instead analyzes its request for statutory damages under § 553. *See*, *e.g.*, *Wood*, 2011 WL 6961334, at *4-6; *J&J Sports Prods., Inc. v. Magat*, No. C 11-01149 WHA, 2011 WL 4831206, at *2-3 (N.D. Cal. Oct. 12, 2011).

Under § 553(c)(3)(A)(ii), a plaintiff is entitled to damages of no less than $250, but no more than $10,000, in an amount the court considers just. "The Court may also enhance the award of damages by up to $50,000 if it finds that the conduct was 'committed willfully and for the purposes of commercial advantage or financial gain.'" *Seldner*, 2011 WL 2650961, at *1 (quoting § 553(c)(3)(B)). In determining damages under this section, courts consider a variety of factors including "use of a cover charge, increase in food price during programming, presence of advertising, number of patrons, number of televisions used, and impact of offender's conduct on claimant." *J&J Sports Prods., Inc. v. Concepcion*, No. 10-5092 WHA, 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011). Courts also consider whether a defendant is a repeat offender. *See J&J Sports Prods., Inc. v. Paniagua*, No. 10-05141 LHK, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011). In addition, courts consider the actual cost of a commercial license, defendant's incremental profits, and the need to deter piracy. *See Mosley*, 2011 WL 2066713, at *5 (calculating actual losses based on the license fee and an estimate of defendant's potential profits); *J&J Sports Prods. v. Ho*, 10-01883 LHK, 2010 WL 3912179, at *1 (N.D. Cal. Oct. 5, 2010) (stating that "[a] traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants") (internal citations omitted).

//

1  Mr. Serbus did not pay a cover charge and observed one mid-size television in a corner of the
2  restaurant. Serbus Affidavit, ECF No. 57-3 at 1. He estimated the restaurant's capacity to be 75,
3  and there were 29, 31, and 31 individuals present during his three headcounts. Mr. Serbus described
4  a "white wipe board located near the front door with writing on it announcing that the El
5  Salvador/Trinidad and Tobago and USA/Mexico matches would be shown." *Id.* Although Mr.
6  Serbus did not specify whether the white board was inside or outside, the court notes that a white
7  board is visible outside the front door in the photograph attached to his affidavit. *Id.* at 5. There is
8  no indication that Ms. Mendez is a repeat offender. ISM does not allege or provide any evidence of
9  increased food or beverage prices, nor an increase in patrons on August 12, 2009. As such, the court
10 cannot determine what, if any, profit Ms. Mendez made as a result of the Program's exhibition.

11 Accordingly, the court recommends awarding ISM $1,000 in statutory damages under
12 § 553(c)(3)(A)(ii), representing ISM's actual losses for the $1,000 license fee Ms. Mendez failed to
13 pay. *See, e.g.*, *J&J Sports Prods., Inc. v. Sergura,* C 12-01702 JSW (JSC), 2014 WL 1618577, at *5
14 (N.D. Cal. Apr. 21, 2014) (awarding statutory damages equal to the unpaid license fee); *Wood*, 2011
15 WL 6961334, at *6 (recommending statutory damages equal to the unpaid license fee).

16 **B. Enhanced Damages**

17 ISM also seeks the maximum enhanced damages under § 605(e) (3)(C)(ii). Motion, ECF No.
18 57-1 at 14-19. For the reasons explained above, the court will instead analyze enhanced damages
19 under § 553(c)(3)(B), under which the maximum is $50,000. *See*, *e.g.*, *Wood*, 2011 WL 6961334, at
20 *6; *Magat*, 2011 WL 4831206, at *3. Where "the violation was committed willfully and for the
21 purposes of direct or indirect commercial advantage or private financial gain," the court has
22 discretion to enhance the damages. *See* § 553(c)(3)(B). ISM argues that it is impossible that the
23 signal Ms. Mendez used to exhibit the Program was mistakenly, innocently, or accidentally
24 intercepted. Motion, ECF No. 57-1 at 14-15. The court agrees that the evidence supports an
25 inference that Ms. Mendez willfully intercepted and exhibited the Program. *See Joe Hand*
26 *Promotions, Inc. v. White*, C 11-01331 CW (JSC), 2011 WL 4406354, at *6 (N.D. Cal. Aug. 2,
27 2011), *report and recommendation adopted*, 2011 WL 4406351 (N.D. Cal. Sept. 21, 2011).
28 //

C 10-03516
9

The presence of the white board outside the restaurant advertising the Program indicates affirmative action for the purpose of financial gain. Nevertheless, the Program was shown on only one mid-size television, and there is no evidence of increased prices, a cover charge, or a repeated offense. As such, the record reflects no usual or egregious circumstances supporting a substantial enhancement. In light of Ms. Mendez's willful misconduct and the goal of deterring future violations of § 553, however, the court concludes that an enhanced damages award of $2,000—twice ISM's actual losses—is appropriate. *See, e.g, Sergura,* 2014 WL 1618577, at *5 (recommending enhanced damages of double the statutory award where there was no allegation defendant was a repeat offender, no coverage charge, no evidence that food and beverage prices were increased, and the Program was shown on "one relatively small television"); *Wood*, 2011 WL 6961334, at *7 (recommending $2,000 in statutory damages based on plaintiff's actual loses and $5,000 in enhanced damages where there was no cover charge, no increased prices, and the restaurant was at one-third capacity); *Mosley*, 2011 WL 2066713, at *5 (awarding $2,500 based plaintiff's actual losses and $2,500 in enhanced damages where there were 17 patrons and no cover charge); *J&J Sports Prods., Inc. v. Bonilla*, No. C 10-5140 LHK, 2011 WL 1344346, at *2 (N.D. Cal. Apr. 8, 2011) (awarding $2,200 in statutory damages based on plaintiff's actual losses and $2,200 in enhanced damages where there were three to ten patrons, no cover charge, and no evidence of how much defendants made during the unlawful broadcast of the Program).

**C. Conversion Damages**

ISM seeks $1,000 in conversion damages, which is the amount Ms. Mendez would have paid if she had obtained a license to show the Program. *See* Motion, ECF 57-1 at 20; Jacobs Affidavit, ECF No. 60 at 3, ¶ 8. The court finds that ISM has established that the relevant fee was $1,000 and recommends it be awarded in full. *See J&J Sports Prods., Inc. v. Banuelos*, No. C 12-2244 PJH, 2013 WL 1282885, at *1 (N.D. Cal. Mar. 27, 2013) (awarding license fee as damages on plaintiff's conversion claim in light of evidence establishing amount of fee).

**CONCLUSION**

Based on the foregoing, the undersigned RECOMMENDS that ISM's motion for default judgment be GRANTED as to its claim under 47 U.S.C. § 553 (Count II) and for conversion (Count

III) and DENIED as to its claim under 47 U.S.C. § 605 (Count I). The undersigned RECOMMENDS that judgment be entered in favor of ISM against Ms. Mendez, individually, and doing business as El Patio Restaurant. The undersigned FURTHER RECOMMENDS that ISM be awarded a total of $3,000 in statutory damages under 47 U.S.C. § 553(c)(3)(B) and the sum of $1,000 for its conversion claim. The court notes that ISM did not seek attorneys' fees, which are discretionary under § 553. *See* 47 U.S.C. § 553(c)(2)(c).

ISM shall serve a copy of the report and recommendation on Ms. Mendez within three days from the filing date of this order and shall file a proof of service thereafter.

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3. Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated: June 19, 2014

_____
LAUREL BEELER
United States Magistrate Judge